## ·Case No: 12,614.

### SEDGWICK v. LYNCH.

[Nowhere reported; opinion not now accessible.]

## Case No. 12,615.

### SEDGWICK v. LYNCH.

[5 Ben. 489; [1] 8 N, B. R. 289.]

District Court, S. D. New York. Feb., 1872. [2]

BANKRUPTCY—SALES OUT OF ORDINARY COURSE OF BUSINESS—PRICES RECEIVED—INSOLVENCY.

1. V. & Co. were wholesale grocers, having, also, retail stores. On December 12th, 1868, they suspended payment, owing debts to the amount of $150,000. On November 13th and 23d, and December 2d, they sold goods, at their wholesale store, to L., to the amount, in all, of $12,-021.50, which were paid for by him in cash, at the time. L. was not in the grocery business, and bought the goods at a low price. V. & Co. having been adjudged bankrupts, their assignee brought suit against L., to set aside the sales and recover the property or its value. The suit was based on the 35th section of the bankruptcy act [of 1867 (14 Stat. 534)]. Held, that there was nothing about the sales that could be alleged to have been out of the usual and ordinary course of business, except in regard to price.

2. This fact of low prices, under the circumstances, was not sufficient to characterize the sales as out of the usual and ordinary course of business.

3. Although the debts of V. & Co. were maturing so fast, in comparison with their receipts from debts due them and ordinary sales, that, having exhausted their powers of borrowing, they were resorting to sales at a sacrifice, still there was nothing to show that they had not reasonable cause to believe that, by these sacrifices, they would weather the storm, except the fact that they suspended payment so soon, and three days after filed a petition as voluntary bankrupts; and this fact did not show that they were then insolvent or contemplating insolvency.

[This was a bill in equity by John Sedgwick, assignee in bankruptcy of Abraham and James S. Valk against John Lynch.]

T. M. North, for plaintiff.

W. Fullerton and D. N. Rowan, for defendant.

BLATCHFORD, District Judge: On the 15th of December, 1868, Abraham Valk and James S. Valk filed a petition in voluntary bankruptcy in this court. They were grocers. The plaintiff is their assignee in bankruptcy, and files this bill to set aside, as fraudulent, certain sales of groceries made by them to the defendant, three in number. The first sale was made on the 13th of November, 1868, and comprised 150 chests of tea, 6,300 pounds, at 45 cents per pound, $2,835.00; 60 bags of coffee, 9,600 pounds, at 13½ cents per pound, $1,296.00; 12 boxes of sugar, 5,400 pounds, at 9½ cents per pound, $513.00; 60 barrels of whiskey, 2,640 gallons, at 70 cents per gallon, $1.848.00; 25 casks of sherry, $500. The second sale was made on the 23d of November,

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court. Case unreported.]

1868, and comprised 3,730 pounds of tobacco, at 45 cents per pound, $1,678.50; 25 barrels of whiskey, 1,027 gallons, at $1 per gallon, $1,027.00; 12 chests of tea, 540 pounds, at 60 cents per pound, $324.00. The third sale was made on the 2d of December, 1868, and comprised 20,000 pounds of sugar, at 10 cents per pound, $2,000.00. The amount of the first sale was $6,992.00; of the second sale, $3,029.-50; of the third sale, $2,000.00; and of the aggregate of all, $12,021.50. The bill alleges, that the sales were made in fraud of the creditors of the bankrupts, and in fraud of the provisions of the bankruptcy act; that the bankrupts, being insolvent, and in contemplation of insolvency and bankruptcy, made the sales; that, at the time the sales were made, the defendant had reasonable cause to believe the bankrupts to be insolvent, or to be acting in contemplation of insolvency, and that the sales were made with a view to prevent their property from coming to their assignee in bankruptcy, or to prevent the same from being distributed under the said act, or to defeat the object of, or in some way to impair, hinder, impede or delay the operation and effect of, or evade some of the provisions of, the said act; that the sales were not made in the usual and ordinary course of business of the bankrupts; and that the sales were void under the provisions of the said act, and passed to the defendant no title to the property sold, as against the plaintiff. The bill prays that the sales may be decreed to be, as to the plaintiff, null and void; that the property sold may be decreed to have vested in the plaintiff, as such assignee, as against the defendant; that the plaintiff, as such assignee, may be decreed to recover the property, or the value thereof, from the defendant; and that the defendant be decreed to deliver to the plaintiff, as such assignee, all of the property remaining in his hands, and to pay to the plaintiff the value of so much thereof as may have been disposed of by him.

The bankrupts suspended payment on the 12th of December, 1868, owing debts to the amount of $150,000. In addition to a wholesale store in New York, they had had eight retail stores in New York, Brooklyn and Newark. The usual amount of their stock at their wholesale store was from $50,000 to $75,000. During the month before their failure $93,-000 were paid by them to their creditors, and during the month before that $60,000. In their wholesale business they sold goods for cash and on time, to any one who came to purchase, and bought in large quantities from manufacturers, importers and jobbers. They failed, after having made all the efforts they could to collect the debts that were due to them, and they failed because they did not collect such debts. They also made all the sacrifices they could to meet their liabilities, struggling not to fail. They borrowed no money for the two months next preceding their failure, but made their payments out of moneys collected from debtors, and moneys